**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-08040-001-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Douglas Allen Jones, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Suppress Statements (Doc. 79.) The Government filed a response (Doc. 81), Defendant filed a reply (Doc. 96), and an evidentiary hearing was held on June 7, 2021. At the hearing, the parties stipulated to the admission of the recorded interviews and the matter was taken under advisement. The Court has now had the opportunity to consider the pleadings, testimony from the hearing, audio recordings, and relevant case law and will deny the motion to suppress.

On January 23, 2018, a search warrant was executed at Jones' residence in Prescott, Arizona. Jones came to the door in his boxers, he was removed from the residence and placed in a marked police vehicle with the heat on but the windows open. After approximately 10 – 25 minutes, an agent brought Jones some clothes. He was then moved to an unmarked FBI SUV (Ford Edge, a mid-size SUV) vehicle near the residence. Jones sat in the front passenger seat. While other agents executed the search warrant, Jones was interviewed while inside the FBI's SUV vehicle by FBI Agents Candace Rose and Charles Davis. The heat was on in the vehicle and the interview was recorded. The recorded

interview with Jones was conducted in two parts, referred to in this Response as "Part 1" (42 minutes, 51 seconds) and "Part 2" (29 minutes, 54 seconds) for a total interview time of about 73 minutes. The interview was separated because at the end of Part 1, Agent Rose left the vehicle to speak to law enforcement officers on scene and Agent Davis stayed with Jones in the vehicle. Jones was told that he could leave to go to work after the first interview, but he wanted to stay while the FBI was at the house.

Law enforcement has an obligation to give a suspect Miranda warnings before interrogation if the individual is "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam). To determine if a person is in custody for purposes of Miranda, one must first look at the objective circumstances of the interrogation. *Howes v. Fields*, 565 U.S. 499, 509, 132 S. Ct. 1181, 1189, 182 L. Ed. 2d 17 (2012). The judge should then consider whether, under the circumstances, a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.*

Here, the Court finds that Defendant was not in custody during the first interview because although he was questioned inside of an FBI vehicle, he was seated in the front seat, he was not handcuffed, and was free to leave. Additionally, he was not confronted with any evidence of guilt during this first interview and the agents' questions were not overtly accusatory. The Court finds that Defendant was in custody during the second interview. Although Defendant was still seated in the front seat and was not handcuffed, it is not clear that he was still free to leave. Agent Rose returned to the car and during the second interview and began to confront him about child pornography found on his computer.

Additionally, regardless of whether he was in custody or not, Defendant was advised of his Miranda warnings at the start of the first interview. He then knowingly, intelligently, and voluntarily waived his Miranda rights.

**I. Defendant's Waiver of his Right to Remain Silent**

For a Defendant's waiver of rights to be valid it must be voluntarily, knowingly,

and intelligently given. Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant. *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (other citations omitted) A waiver is knowing and intelligent if, under the totality of the circumstances, it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U. S. 412, 321-23 (1986); *Rodriguez-Preciado*, at 1127 (citations and quotations omitted). There is a presumption against waiver, and the government bears the burden of proving a valid waiver by a preponderance of the evidence. See *Colorado v. Connelly,* 479 U.S. 157, 168 (1986). The government also must show by a preponderance of the evidence that a defendant's statement was voluntary. *Connelly*, 472 U.S. at 168; *affirming Lego v. Twomey*, 404 U.S. 477, 489 (1972). A voluntariness inquiry considers all the circumstances of the interrogation. *Mincey v. Arizona*, 437 U.S. 385, 401 (1978). Relevant circumstances may include a suspect's age, education, intelligence, physical health, and prior experience with the criminal system; the length, location, and conditions of detention; the length and nature of questioning; and the use by law enforcement of any threats, punishments, or inducements. *Bradford v. Davis*, 923 F.3d 599, 615-16 (9th Cir. 2019) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

The Court finds that the Government has shown by a preponderance of the evidence that Jones' waiver was valid. There was no evidence of any police coercion. Agent Rose read Jones his Miranda warnings, asked him, "Do you understand your –those rights?" to which Jones answered, "I guess so;" and asked Jones to sign a written Miranda waiver which he did.[1] Defendant was thirty-three years old at the time, was not under the influence of any drugs or alcohol and had prior experience with the criminal system. Additionally,

---

[1] Although not in the original motion, Counsel argued at the hearing that Jones could not read the written warnings because he did not have his glasses. This argument is rejected because there was no evidence presented that he couldn't read the form and earlier in the interview, Jones could be heard reading from the search warrant. That suggests that Jones could read the Miranda waiver form.

Jones repeated several times throughout the interview that he understood he did not have to talk to the FBI agents.

Defendant's argument that his waiver was invalid is based on claims that he was in an "impaired mental and emotional state." (Doc. 81 at 5.) However, the Court does not believe the evidence supports finding the Defendant's waiver invalid. Indeed, other courts in this circuit have routinely upheld a defendant's wavier in similar circumstances. *See e.g.*, *Seng Yang v. Fisher*, No. 1:16-cv-01863-DAD-MJS (HC), 2018 WL 1392895 *5, (E.D. Cal. Mar. 19, 2018); *Garrett v. Beard*, No. 14CV1572 BEN (PCL), 2015 U.S. Dist. LEXIS 49715 (S.D. Cal. Apr. 14, 2015) (finding a valid waiver by a defendant with history of mental illness who was interrogated while on painkillers and recovering from life threatening injuries).

Further, the Court has listened to the audio recordings of the interviews between Defendant and the agents. While Defendant's tone reflects the tension of his circumstances, it does not convey any sort of descension into hysteria. Additionally, Defendant at various times reaffirms to the officers that he understands his rights and understands that he need not speak with them during the interview. (Doc. 79-2 at 25.) This reaffirmation by the Defendant that he knew he could remain silent shows that during the course of his interview he knew what his rights under the law were and was voluntarily continuing to speak.

**II. Invocation of the Right to Remain Silent**

Jones argues that agents should have terminated the interview when, during the second interview, he said "[i]t does help you, maybe, but other than that, I just want to be taken to jail. If that's how this is going to go down today, I don't mind." The Defendant Claims that by this statement he invoked his Fifth Amendment right to remain silent and the agents should have immediately stopped speaking to him. *See Berghuis v. Thompkins*, 560 U.S. 370, 388 (2010) ("If…the right to remain silent is invoked at any point during questioning, further interrogation must cease.") However, the Court finds that Defendant's statement was not an unambiguous invocation of his Fifth Amendment right to remain silent.

In *Berghuis v. Thompkins*, the Supreme Court found "no principled reason to adopt different standards for determining when an accused has invoked the Miranda right to remain silent and the Miranda right to counsel." *Id*. at 2260. Thus, it held that, like the right to counsel, the right to remain silent must be invoked unambiguously. *Id*.; *accord*, *Lopez v. Janda*, 742 Fed. Appx. 211, 214 (9th Cir. 2018) ("it is not his intent that matters; it is whether his statement would have been unambiguous to a reasonable officer.") Defendant points to his statement "I just want to be taken to jail" as an invocation of his Fifth Amendment right.  The exchange between Special Agent Rose and the Defendant went as follows:

> S.A. ROSE: I do. I do want to hear your side of the story. Okay?
>
> MR. JONES: There's no side to my story though.
>
> S.A. ROSE: You don't have any side of your story.
>
> MR. JONES: What side can I possibly have?
>
> S.A. ROSE: I mean, there's things we'd like to know
>
> MR. JONES: I mean --
>
> S.A. ROSE: Like, how long have you been doing it?
>
> MR. JONES: Absolutely. But I can tell you right now that none of which is helping at all. Period. Not me. Not you.
>
> S.A. ROSE: It does help us.
>
> MR. JONES: It does help you, maybe, but other than that, I just want to be taken to jail. If that's how this is going to go down today, I don't mind. I appreciate you guys being the way you are right now. You're treating me like a person.

(Doc. 79-2 at 20.)

The exchange begins with Agent Rose asking for the Defendant's explanation of evidence found on his laptop. (Doc. 79-2 at 20.) After a bit of back and forth the Defendant suggests that nothing, he can tell them will be of help either to the agents or himself. (*Id*.) Agent Rose then suggests that Defendant's cooperation could help the agents, to which the

- 5 -

Defendant responds, "It does help you, maybe, *but other than that*, I just want to be taken to jail." (*Id.*) *See.*, Merriam-Webster's Collegiate Dictionary, 879 (11th ed. 2003) (defining "other than" as meaning "with the exception of, EXCEPT FOR, BESIDES"). Thus, Defendant's actual statement could be construed as an admission he could help the agents, and a statement that "except for" his desire to be of help, the only thing he would want to do was go to jail. This does not equate to an unambiguous statement of his unwillingness to continue speaking.

Even apart from the above, as the Government notes multiple courts have found that similar statements were not unambiguous invocations of a Defendant's Fifth Amendment rights. *Compare* (Doc. 79-2 at 20 ("I just want to be taken to jail.")) *with*, *Deweaver v. Runnels*, 556 F.3d 995, 999 (9th Cir. 2009) (finding defendant "did ask to go back to jail" but the state court's ruling that such a statement was ambiguous did not violate binding precedent); *United States v. Farley*, No. 18-cr-00400-TSH-1, 2019 U.S. Dist. LEXIS 44169, at *16 (N.D. Cal. Mar. 18, 2019)) (noting a defendant's request to "put [him] back in the cell" was ambiguous); *accord*, *Hernandez v. McDonald*, 2014 U.S. Dist. LEXIS 180204, at *4-5, *13 (C.D. Cal. Nov. 3, 2014). As such, Defendant's mere statement that he just wanted to be taken to jail was, even standing alone, not an unambiguous invocation of his right to remain silent.

**III. Conclusion**

Accordingly,

**IT IS ORDERED** denying Defendant's Motion to Suppress Statements (Doc. 79)

Dated this 10th day of June, 2021.

Honorable Susan M. Brnovich
United States District Judge